# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| LEANN ABELL, | Case No.: 2:17-cv-00531-REB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, RYAN ZINKE, Secretary; BUREAU OF LAND MANAGEMENT, | **DEFENDANT'S[1] MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** (Dkt. 32) |
| Defendants, | **PLAINTIFF'S MOTION TO STRIKE DECLARATIONS SUBMITTED IN REPLY** (Dkt. 48) |

Pending before the Court are (1) Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (Dkt. 32), and (2) Plaintiff's Motion to Strike Declarations Submitted in Reply (Dkt. 48). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. GENERAL BACKGROUND

Plaintiff LeAnn Abell is a 57-year-old botanist who works for the BLM's Coeur d'Alene District – she has worked for the BLM since 1988 and has been a full-time botanist for the Coeur d'Alene District since 1999. Through this action, Abell claims that she has been discriminated against, retaliated against, and subjected to a hostile work environment because of her age. *See*

---

[1] On November 27, 2018, the Court granted then-Defendants' Motion to Dismiss, dismissing the United States Department of the Interior and the Bureau of Land Management ("BLM") from this case. *See generally* 11/27/18 MDO (Dkt. 27). Therefore, only Secretary Ryan Zinke (now David Bernhardt) is the proper defendant.

**MEMORANDUM DECISION AND ORDER - 1**

*generally* Am. Compl., ¶¶ 20-29 (Dkt. 8) (asserting lone cause of action as "Claim of

Discrimination, Hostile Work Environment, and Retaliation Based on Age").  Through the at-

issue Motion, Defendant argues that summary judgment is appropriate because "(1) nearly all of

the purported acts or omissions upon which Abell bases her claims do not constitute adverse

employment actions; (2) many of the purported adverse employment actions took place long

before Abell contacted the Equal Employment Office and thus are not actionable; (3) there were

legitimate, nondiscriminatory reasons for any counselling or discipline; (4) there is no causal link

between Abell's age and the purported adverse employment actions; and (5) the purported

harassment was not severe or pervasive."  Def.'s MSJ, pp. 1-2 (Dkt. 32).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or

defense, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  One of the principal purposes of summary

judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986).  It is "not a disfavored procedural shortcut," but is instead the

"principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and

prevented from going to trial with the attendant unwarranted consumption of public and private

resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute

as to any *material* fact – a fact "that may affect the outcome of the case."  *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and

the court must not make credibility findings.  *See id*. at 255.  Direct testimony of the non-movant

must be believed, however implausible.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.

1999).  On the other hand, the court is not required to adopt unreasonable inferences from circumstantial evidence.  *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the non-moving party's case.  *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).  This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *See Devereaux*, 263 F.3d at 1076.  The non-moving party must go beyond the pleadings and show "by her . . . affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).

However, the court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).  Instead, the "party opposing summary judgment must direct [the court's] attention to specific triable facts."  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## III.  DISCUSSION

### A.    Age Discrimination Claim

The Age Discrimination in Employment Act ("ADEA") makes it "unlawful for an employer . . . to discharge any individual," or otherwise discriminate against an employee because of her age.  29 U.S.C. § 623(a).  "To prove discrimination because of age, [Abell] must introduce evidence from which a reasonable jury could conclude, in light of common experience, that it was more likely than not that the employer's adverse action was motivated by

consideration of [her] age." *Maxfield v. Brigham Young Univ.-Idaho*, 27 F. Supp. 3d 1077, 1086 (D. Idaho 2014) (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 579-80 (1978)). "Age discrimination can be established through either direct or indirect evidence." *Mousaw v. Teton Outfitters, LLC*, 2016 WL 5746344, at *4 (D. Idaho 2016) (citing *Coghlan v. Am. Seafoods Co., LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005)). However, simply proving age "played a role" in the adverse action is not enough to prevail; rather, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (holding that mixed-motive theory applicable to Title VII claims is not available in ADEA claims).

The Ninth Circuit utilizes the three-step *McDonnell Douglas* burden-shifting framework to analyze age discrimination cases. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Under this framework, the employee must first establish a prima facie case of age discrimination; once the employee has done so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action; if the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination. *See Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

A plaintiff can establish a prima facie age discrimination case based on circumstantial evidence by showing the following: (1) that she is a member of a protected class; (2) that she was qualified for her position and performing her job satisfactorily; (3) that she experienced adverse employment action; and (4) that similarly situated individuals outside of the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010) (citing *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir.

2004)). "The requisite degree of proof necessary to establish a prima facie case for . . . ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis*, 26 F.3d at 889; *see also Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000) ("As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment.").

The ADEA defines an adverse employment action as one that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment." *Chuang*, 225 F.3d at 1126; *see also* 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."). Abell initially alleges that she "suffered adverse employment actions because of her age," specifying "those actions" within her Amended Complaint as including:

- Being denied opportunities that would lead to promotion;

- Being denied training opportunities that would lead to pay raises and/or promotions;

- Being subjected to increased standards of performance that other younger workers are not subjected to;

- Being denied opportunities to relocate her position;

- Being denied opportunities to work a more favorable schedule; and

- Being disciplined without cause and because of her age.

Am. Compl., ¶ 20 (Dkt. 8); *see also id.* at ¶¶ 21-23 (alleging that no explanation for claimed adverse actions exists, other than age discrimination; Abell's supervisors took no action on complaints about said discrimination; and younger employees were (and are) treated more favorably than Abell).

**MEMORANDUM DECISION AND ORDER - 5**

Defendant disagrees, arguing that "Abell cannot recall being demoted, being denied any specific promotion, or losing any benefits within the past five years." Mem. ISO MSJ, p. 14 (Dkt. 32-1) (citing Ex. B to Wucetich Decl. at 129:16-131:21 (Dkt. 32-26)). In turn, Defendant attempts to identify various "perceived slights" that, while possibly representing adverse employment actions in Abell's mind, actually do not.[2] *See id*. at pp. 15-21. For instance, Defendant argues that:

- "The Letter Of Counsel Was Just A Written Warning";

- "Abell Cannot Base Her Claim On A Purported Failure To Promote Because She Did Not Seek Out Any Promotions";

- "The Purported Denial Of Training Requests Did Not Affect The Terms And Conditions Of Abell's Employment";

- "The Denial Of Abell's Request To Be Transferred To A Supervisor In Another Field Office Was Not An Adverse Employment Action";

- "The Purported Denial Of Abell's Request To Switch To A First-40 Work Schedule Is Not An Adverse Employment Action";

- "Adding A Teamwork Criteria To The Entire Field Office's Performance Evaluations Was Not An Adverse Employment Action Toward Abell";

- "Abell's Purported Exclusion From Meetings Did Not Alter The Terms And Conditions Of Her Employment";

---

[2] Defendant's approach here is likely a function of attempting to pinpoint (or, at the very least, rule out) those particular actions that do and do not form the basis of Abell's age discrimination claim. That is, armed initially with only the allegations within Abell's Amended Complaint, Defendant presumably tested the same in discovery and came to understand that Abell is of a mind that she has been discriminated against due to her age by virtue of various circumstances in her workplace over time. *See* Mem. ISO MSJ, p. 15 (Dkt. 32-1) ("Accordingly, Abell strings together a litany of perceived slights over the past seven years in the hopes that one will pass muster."). Of course, even if Defendant is correct in arguing that such conduct does not represent adverse employment actions, Abell's age discrimination claim is not put to rest as a matter of law; it just means that the claim cannot be premised upon *that* particular complained-of conduct. To be sure, Defendant prefaces its argument by stating that "*nearly all* of the acts and omissions upon which Abell bases her [age discrimination and retaliation claims] do not constitute adverse employment actions." *Id*. at p. 14 (emphasis added). In fact, it is possible that *other* acts exist to support the claim(s). *See supra*.

- "Evans's Promotion Did Not Result In A De Facto Demotion of Abell"; and

- "Purported Teasing By Co-Workers For Wearing Large, Noise Cancelling Headphones In The Office Is Not An Adverse Employment Action."

*Id*. According to Defendant, because none of these actions amounts to a requisite adverse employment action, there can be no age discrimination claim tethered thereto.

Abell does not respond to these arguments specifically (at least in the context of her age discrimination claim), but instead generally states:

> In the case at bar, Ms. Abell can show that she was subjected to employment actions that materially affected the compensation, terms, and conditions of her employment. She was forced to give up acting field manager duties because she would not participate in creative, and perhaps, illegal timekeeping related to the way that younger workers were allowed to work. Part of her job description was given to another younger worker making her position ineligible for GS-12 paygrade status. She was given a lower performance review with no explanation on the review. The lower rating made her ineligible for cash awards which she had previously received. She was also suspended from work for three days without pay.

Opp. to MSJ, p. 20 (Dkt. 41); *cf.* Reply ISO MSJ, pp. 1-2 (Dkt. 47) (Defendant stating in its reply: "In fact, Abell does not even address any of the case law discussed in the Secretary's memorandum which establishes that the alleged acts do not rise to the level of an adverse employment action. Instead, Abell argues that there are some acts, which previously were not the focus of her complaint,[3] that can constitute an adverse employment action under the broader definition applied in retaliation claims."). The Court therefore understands that Abell's age discrimination claim has been distilled down to include only those actions explicitly cited by Abell in her briefing to represent actionable discriminatory conduct, to wit: (1) being taken off

---

[3] This is an overstatement. The age discrimination-related arguments contained in Abell's opposition to Defendant's Motion for Summary Judgment are more-or-less consistent with certain of the allegations contained within the Amended Complaint. *See supra.* At the same time, it is not incorrect to state that Abell's claims in this respect are less-than-exact and have arguably even morphed over time. This Memorandum Decision and Order recognizes as much and attempts to "settle the pond" on this issue.

acting manager duties for not approving younger employees' falsified time records; (2) assigning her job duties to a younger employee, thereby ensuring that she would not be promoted from pay grade 11 to pay grade 12; (3) receiving poor performance reviews, making her ineligible for a monetary award; and (4) being suspended from work without pay. *See supra.*[4]

These actions, viewed in the light most favorable to Abell, constitute adverse employment actions; each materially affects Abell's compensation, terms, conditions, and/or privileges of employment – premised as they are upon allegations that younger employees were treated more favorably at each turn. Such allegations have many moving parts, the nuts and bolts of which are unquestionably fact-dependent and, thus, beyond the reach of this Memorandum Decision and Order when considering the procedural setting presented by Defendant's Motion for Summary Judgment. Suffice it to say, for each of these actions, Abell contends:

- Removal From Field Manager Duties: "Younger employees were receiving cash awards that were not given to older employees meeting the same criteria. Younger employees were submitting timesheets that appeared to be falsified, in that they included hours which were not actually worked. As acting field manager [Abell] was asked to approve these timesheets. Since Ms. Abell did not want to be complicit in the falsified time records, she asked to be taken off acting manager duties." Abell's SOF, p. 2 (Dkt. 42) (internal citations omitted).

- Doug Evans's Promotion and Reduction of Job Duties: "Doug Evans, a younger employee, was promoted in Fall 2011. Mr. Pavlat [(Abell's supervisor)] split off some of Ms. Abell's job description to Mr. Evans without discussing it with her. By taking away some of Ms. Abell's authority and duties and assigning them to someone else, Ms. Abell's position was assured to be locked at pay grade 11 instead of being eligible for pay grade 12 designation." *Id.* at pp. 2-3 (citing Abell Decl., ¶ 8 (Dkt. 44) ("By taking away some of my job responsibilities and authority and giving it to Mr. Evans, a younger worker, Mr. Pavlat insured that my position would never meet the requirements for GS-12 paygrade eligibility, consistent with other specialists that were assigned to both the Cottonwood and Coeur d'Alene field offices. . . . . [My job description] describes what is supposed to be my ability to delegate. Instead of allowing me

---

[4] In this aspect, Defendant's Motion for Summary Judgment is granted, in part, to the extent that its arguments concerning *possible* bases for Abell's age discrimination claim are neither confirmed, nor even addressed, by Abell herself in her briefing on the matter. *See* Fed. R. Civ. P. 56(e)(3).

**MEMORANDUM DECISION AND ORDER - 8**

to delegate what I wanted, Mr. Pavlat, as part of a promotion of Mr. Evans, assigned away permanently some of my responsibilities.”)).[5]

- Poor Performance Reviews:  After raising concerns about disparate treatment, “[o]n October 28, 2016, Mr. Pavlat completed a performance review of Ms. Abell.  It was the lowest review she had ever received.  Typically, Ms. Abell received a superior rating which entitled her to a monetary award.  The lower rating made her ineligible for a monetary award. . . . .  Also in 2017, a new critical element was added to Ms. Abell’s performance review.  This element is completely subjective, and as far as it is known, Ms. Abell is the only one in the office to have this element as a part of a performance evaluation.”  Abell’s SOF, pp. 5, 7 (Dkt. 42) (citing Abell Decl., ¶¶ 28, 37-38 (Dkt. 44) (“Mr. Pavlat did not explain to me why my rating was lower.  He also did not put any comments on the review which would explain the lower rating.  Typically, I received a superior rating, which entitled me to a monetary award.  The 2016 performance review did not entitle me to a performance award. . . . .  Shortly after my 2016 review, Mr. Pavlat added critical element number 4 [(“Teamwork and Communication”)] to my evaluation.  This element is completely subjective.  As far as I know, I am the only one in the office to have this element as a part of my performance evaluation.  Every performance evaluation I’ve received since 2016 has been lower than a superior rating without any explanation.  I also have not received another performance cash award.”)).[6]

- Suspension:  “In 2018, after Ms. Abell made another complaint about unequal treatment regarding the in/out board, Mr. Pavlat attempted to suspend Ms. Abell for seven days.  On July 12, 2018, he gave her a proposed 7-Day suspension based on inappropriate conduct and false or unfounded statements.  In the proposed 7-Day suspension document, Mr. Pavlat made it clear that Ms. Abell should not be allowed to make complaints [and] he stated it was inappropriate

---

[5] Defendant objects to Abell’s comments on this point, arguing that they lack personal knowledge, are speculative, and that she testified that she opted not to pursue promotional opportunities.  *See* Obj. to Abell Decl., p. 2 (Dkt. 47-1); *see also* Mem. ISO MSJ, p. 20 (Dkt. 32-1).  The Court disagrees that Abell lacks the personal knowledge to describe a “before and after” situation involving her job duties.  Separately, in determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (affirming consideration of hearsay contents of plaintiff’s diary on summary judgment because at trial, plaintiff’s testimony of contents would not be hearsay).  Finally, that Abell may never have sought a promotion in the past does not *ipso facto* mean that, as a matter of law, she would not have sought a promotion had she been qualified for one at some other future point in time.

[6] Defendant again objects, arguing that it lacks personal knowledge in that, in fact, Abell was not entitled to a monetary award even if she had a higher rating.  *See* Obj. to Abell Decl., pp. 5-6 (Dkt. 47-1).  This is a question of fact incapable of resolution here.  Even so, the Court notes Defendant’s argument that a “teamwork criteria” was added as an evaluation criteria for *all* field office employees.  *See* Mem. ISO MSJ, p. 19 (Dkt. 32-1) (citing Pavlat Decl., ¶ 28 (Dkt. 32-3)).

for her to question the actions of certain individuals or his alleged favoritism toward them." Abell's SOF, p. 7 (Dkt. 42) (citing Abell Decl., ¶¶ 35-36 (Dkt. 44) ("Mr. Pavlat made it clear in his proposed suspension that he felt it was inappropriate for me to even bring disparate treatment (favoritism) allegations. This felt like another instance of retaliation to me. Mr. Pavlat's attempt to have me suspended for seven days was reviewed by Aaron Rasmussen. Mr. Rasmussen mitigated one of Mr. Pavlat's charges against me and sustained the other charge. I was subjected to a three day suspension.")).[7, 8]

---

[7] Defendant again objects, arguing that Abell mischaracterizes the suspension document and that it speaks for itself. *See* Obj. to Abell Decl., p. 6 (Dkt. 47-1). The parties' respective interpretations of the at-issue suspension document are not taken up here except to highlight Abell's association of her suspension (in and of itself) with an adverse employment action to support her age discrimination claim.

[8] Despite these allegations of adverse employment actions, Defendant argues that any pre-May 9, 2016 actions cannot apply to establish prima facie age discrimination and retaliation claims because they were not timely filed with the Equal Employment Opportunity Commission ("EEOC"). *See* Mem. ISO MSJ, pp. 21-22 (Dkt. 32-1) ("Abell initially contacted the EEO on June 21, 2016. Accordingly, any acts or omissions completed prior to May 9, 2016 are outside the 45-day window set forth in [29 C.F.R. § 1614.105] and thus cannot serve as the purported adverse employment actions needed to support a discrimination or retaliation claim."). Abell does not dispute that certain purported adverse employment actions may have occurred more than 45 days before she initiated contact with the EEOC, but counters that Defendant "waived this defense when it accepted, investigated, and concluded Ms. Abell's discrimination and hostile work environment claim from 2015 to the present in the EEO process." Opp. to MSJ, p. 7, n.1 (Dkt. 41) (citing and quoting *Ester v. Principi*, 250 F.3d 1068 (7th Cir. 2001)). But *Ester* (a Seventh Circuit case) explicitly recognized a split among the circuit courts, with the Ninth Circuit "determin[ing] that an agency waives a timeliness defense when it makes a finding of discrimination." *Id*. at 1072 (citing *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985)). Therefore, *Ester* does not apply; *Boyd* and its progeny do. The Ninth Circuit has held that where the EEOC "made an *express finding*" that the complaint was timely, and the employer "neither appealed nor refused to proceed," but rather, "began an investigation," the employer "may not . . . raise the argument that it did not waive the timeliness argument" in subsequent district court proceedings. *Girard v. Rubin*, 62 F.3d 1244, 1247 (9th Cir. 1995) (emphasis added). However, the Ninth Circuit has also stated that "[t]he *mere receipt and investigation* of a complaint does not waive objection to a complainant's failure to comply with the original filing time limit when the later investigation *does not result in an administrative finding of discrimination*." *Boyd*, 752 F.2d at 414 (emphasis added). Here, the EEOC neither made an express finding that Abell's complaint was timely, nor did its investigation result in an administrative finding of discrimination. Considering this, the Court agrees with Defendant that, to the extent any of the purported adverse employment actions took place prior to May 9, 2016 (45 days before Abell contacted the EEOC), they are not actionable. This discounts the alleged (1) removal from field manager duties and (2) reduction of job duties due to Mr. Evans's promotion as separate bases for Abell's age discrimination claim because they both took place before May 9, 2016. In this limited respect, Defendant's Motion for Summary Judgment is granted.

As Abell has established a prima facie case of age discrimination, *McDonnell Douglas* requires that Defendant sustain its burden of articulating legitimate, nondiscriminatory reasons for its employment decisions. *See supra*. To carry its burden, Defendant must "introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). Defendant provides evidence that its employment-related actions towards Abell were based on staffing and scheduling needs, in addition to Abell's own inappropriate and unprofessional conduct. *See generally* Mem. ISO MSJ, pp. 5-12, 15-24 (Dkt. 32-1). The Court finds that Defendant has articulated legitimate, nondiscriminatory reasons related to the actions that form Abell's age discrimination claim. Accordingly, the burden shifts to Abell to show pretext.

A plaintiff may demonstrate pretext in two ways: "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1148 (9th Cir. 2006) (internal quotation marks omitted). Here, Abell argues that "[a]ny legitimate reason articulated by the Defendant for the adverse employment actions are pretextual," owing to (1) Mr. Pavlat's particular conduct in disciplining Abell as compared to other younger employees, (2) the historic backdrop informing Abell's discrimination claims, and (3) the timing of Abell's poor performance reviews. *See* Opp. to MSJ, pp. 20-21 (Dkt. 41); *but see* Mem. ISO MSJ, pp. 24-28 (Dkt. 32-1) (claiming Abell tried to put "ageist twist" on otherwise innocent remarks and invented facts to show younger workers were purportedly treated better). Viewing the evidence in the light most favorable to Abell, a triable issue exists as to whether Defendant's legitimate nondiscriminatory reasons for its employment decisions affecting Abell were a pretext for age discrimination. *See, e.g.*, *Reynaga v. Rosenburg Forest Prods.*, 847 F.3d 678, 691 (9th Cir. 2017)

("[W]e require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by the fact finder, upon a full record.") (internal quotation marks omitted); *Noyes v. Kelly Serv.*, 488 F.3d 1163, 1170 (9th Cir. 2007) ("[T]he burden on plaintiffs to raise a triable issue of fact as to pretext is hardly an onerous one."); *Reece v. Pocatello/Chubbuck Sch. Dist. No. 25*, 713 F. Supp. 2d 1222, 1231 (D. Idaho 2010) ("Because motivations are often difficult to ascertain, 'such an inquiry should be left to the trier of fact' since impermissible motives are often easily masked 'behind a complex web of post hoc rationalizations.'") (quoting *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1072 (9th Cir. 2003)).

Because triable issues of fact remain on Abell's age discrimination claim, summary judgment is inappropriate on the whole. *But see supra* (discussing those instances where certain of Defendant's arguments are well-taken and consequently where limited relief is granted).

**B.      Retaliation Claim**

To make out a prima facie case of retaliation under the ADEA, a plaintiff must show that (1) she engaged in a protected activity; (2) an adverse employment action was taken; and (3) a causal link exists between the two events. *See O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996). If a plaintiff can make out a prima facie case, then the *McDonnell Douglas* burden shifting scheme applies. *See id.* The burden-shifting scheme, as well as a plaintiff's avenues for showing pretext in a retaliation claim, are no different than as described above under Abell's age discrimination claim. *See Stegall*, 350 F.3d at 1065-66.

As compared to the adverse employment action prong of an age discrimination claim, the Supreme Court has indicated that, concerning retaliation claims, "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity," which "means it well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Abell initially alleges in her Amended Complaint that, immediately upon complaining about discriminatory conduct to her supervisors, she was retaliated against; and, similarly, after lodging her age discrimination complaint with the EEOC in August 2016, she "was subjected to additional retaliation" in the form of the following adverse employment actions:

- "Being called into her supervisor's office for meetings, during which groundless complaints were leveled at her";

- "Her assistant was taken from her and assigned to a younger worker";

- "Other work resources were taken from her, which caused her to miss certain critical deadlines";

- "Exclusion from field office activities";

- "Being threatened with termination of employment";

- "Putting counseling sessions in her personnel file"; and

- "Subjecting her to formal discipline."

*See* Am. Compl., ¶¶ 22-24, 26 (Dkt. 8); *see also id*. at ¶ 27 (Abell alleging that "[t]he retaliatory discrimination was caused by Plaintiff's complaint of age discrimination. Retaliation can be inferred due to the proximity in time between the timing of the complaint and the retaliatory behavior.").

Defendant does not dispute that Abell engaged in protected activity when she both informally and formally made age discrimination complaints. Still, with respect to each instance of its alleged retaliation for her doing so, Defendant argues either that there were no adverse employment actions, no link between Abell's protected activity and any adverse employment

actions, and/or non-pretextual legitimate reasons for any adverse employment actions. *See generally* Mem. ISO MSJ, pp. 14-28 (Dkt. 32-1).[9]

Abell disagrees, claiming that she can meet her burden of establishing a prima facie retaliation claim and "that Defendant's alleged nondiscriminatory reasons for its retaliation (where one is given) is merely pretext." Opp. to MSJ, p. 6 (Dkt. 41). In doing so, Abell highlights four "[s]eparate instances of retaliation which should survive summary judgment," including (1) "the NEPA process retaliation"; (2) "the Windy Bay Project retaliation"; (3) "the EEO complaint retaliation"; and (4) "the In/Out Board retaliation." *Id*. at pp. 6-14.[10]

Viewed in the light most favorable to Abell, each of these situations represents an adverse employment action for the purposes of Abell's retaliation claim; each could dissuade a

---

[9] Defendant's arguments here largely repeat those raised in challenging Abell's age discrimination claim. *See generally* Mem. ISO MSJ, pp. 14-28 (Dkt. 32-1). In its reply briefing, however, Defendant additionally argues that Abell failed to exhaust her administrative remedies for her three-day suspension in August 2018. *See* Reply ISO MSJ, p. 9 (Dkt. 47) ("The decision to impose a suspension was rendered on July 31, 2018, and Abell served the suspension between August 3 and 5, 2018. The suspension cannot be deemed to have been part of the prior administrative proceeding because the agency issued its final decision and right to sue letter on October 6, 2017. Accordingly, the agency action has been closed for approximately 10 months by the time the decision to impose the suspension was made, and there is no record of Abell initiating a new administrative action relating to the suspension."). The Court rejects Defendant's argument on this point – not only was it raised for the first time in its reply briefing, it presupposes that Abell is legally obligated to initiate a *subsequent* administrative complaint relating to Defendant's alleged retaliatory adverse employment actions flowing from her *initial, underlying* administrative complaint. *See, e.g.*, *Emery v. Potter*, 2007 WL 9724323, at *7 (D. Ariz. 2007) ("Courts have held that the claim of retaliation is related to the EEO charge if the protected activity alleged is the filing of the EEO charge.") (citing *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) (holding it was, "unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge."); *Bouman v. Block*, 940 F.2d 1211, 1229 (9th Cir. 1991) (charge of retaliation in response to filing complaint with EEOC was not barred by failure to file EEOC charge about such retaliation, where retaliation claim was reasonably related to prior sex discrimination claim)).

[10] The Court understands that, by focusing upon these specific "instances of retaliation" in her briefing, Abell adds detail to her original allegations, such that, like her age discrimination claim (*see supra*), her retaliation claim encompasses only these events.

reasonable worker from raising a claim of discrimination – the common denominator between them being (1) a precedent complaint of discrimination and/or disparate treatment, followed by (2) recriminations at the hands of a supervisor. Such allegations are again fact-dependent, with Abell's and Defendant's discordant points of view surrounding these events impossible to resolve as a matter of law. Even so, it is enough in this procedural setting that, for each of these actions, Abell contends:

- The NEPA Process Retaliation: "On May 28, 2015, Ms. Hugo [(a younger employee)] implemented a wildlife project with no special status plan species inventory or NEPA analysis. This was in violation of the Act. Ms. Abell raised concern about this favoritism to Kurt Pavlat. Mr. Pavlat informed Ms. Abell that he was simply going to move forward with the project and not require the NEPA [analysis]. Ms. Abell then brought her complaint to Mr. Pavlat's supervisor Linda Clark. Ms. Clark understood that Ms. Abell's complaint was really about treating younger employees more favorably than older employees. Yet, she did nothing to address the issue or follow-up with Ms. Abell. On June 3, 2015, Mr. Pavlat wrote a memo to the file and instead of noting the illegality of Ms. Hugo's behavior he says that Ms. Abell was 'unprofessional' for bringing the Complaint. On June 9, 2015, Ms. Clark and Mr. Pavlat met with Ms. Abell, but instead of addressing Ms. Abell's concerns about the disparate treatment, they threatened her, and Mr. Pavlat indicated that he was putting a counseling session note into Ms. Abell's file. Mr. Pavlat described the meeting as an attempt to address 'Ms. Abell's lack of teamwork/communication with Ms. Hugo and Ms. Lyden [(Abell's helper, but reassigned to Ms. Hugo)].'" Abell's SOF, pp. 3-4 (Dkt. 42) (citing Abell Decl., ¶¶ 14-17 (Dkt. 44) ("On June 9, 2015, Ms. Clark and Mr. Pavlat met with me. I thought they were going to address my concerns. Instead, they berated me, saying I was not being a team player. I started crying and felt humiliated. I felt I was being threatened with termination. Mr. Pavlat indicated that he was putting a counseling session note into my file. Shortly after this meeting, a 'Diversity Tracking' email showed up in my box. This meeting was in retaliation for complaining about the disparate treatment of Ms. Hugo. No part of the June 9, 2015 meeting addressed a way to assist me or re-assign Ms. Lyden to assist me. They also never addressed the double standard applied to Ms. Hugo which allowed her to bypass the NEPA process.")).[11]

---

[11] Defendant objects to Abell's recounting of these events, claiming it represents inadmissible hearsay, mischaracterizes an unauthenticated email, lacks personal knowledge, and contradicts Abell's deposition testimony. *See* Obj. to Abell Decl., pp. 3-4. Even if true, it cannot be said that Abell's evidence on this point cannot be presented in a form that would be admissible at trial and/or tested at trial; therefore, Defendant's objection cannot operate to altogether preclude the Court's consideration here.

- The Windy Bay Project Retaliation: "In March of 2016, Ms. Abell was being bullied by her younger co-workers in that they wanted to change the Windy Bay Project on which she was the lead. Ms. Abell was the lead on that project. On March 16, 2016, Mr. Pavlat met with Ms. Abell and instructed her to meet with one of the younger workers and make her requested changes. Ms. Abell met with the worker but felt that the requested changes would not follow the NEPA process, so she refused the changes. On April 6, 2016, Ms. Abell held a meeting regarding the Windy Bay Project. In this meeting, she attempted to address some of the concerns she had with the project process, she documented in an outline exactly what she addressed. Ms. Abell explained that she had her own leadership style and asked to be respected for her own style, and she asked that everyone do their job to effectively manage the land. The presentation was accompanied by power point slides, many of which Ms. Abell took from a BLM human resources training she attended. Ms. Abell followed this presentation with another complaint to Ms. Clark. . . . . Ms. Clark and Mr. Pavlat never addressed Ms. Abell's concerns about the unequal treatment of younger employees. Instead, they issued Ms. Abell a formal written Letter of Counsel [(on May 9, 2016)] related to the April 6th presentation." Abell's SOF, pp. 10-11 (Dkt. 42) (citing Abell Decl., ¶¶ 18, 21-25 (Dkt. 44) ("On March 16, 2016, Mr. Pavlat met with me and instructed me to meet with Ms. Hugo and make her requested changes to the Windy Bay Project. This is all that I recall that the meeting was about. I understood from the meeting that if I did not make Ms. Hugo happy, things would be bad for me and I might even be terminated.")).[12]

- The EEOC Complaint Retaliation: "On June 21, 2016, Ms. Abell initiated the informal EEO complaint process with the Department of Interior. On October 7, 2016, after the conclusion of the informal process, a formal complaint was accepted and docketed by the EEO. On October 28, 2016, Mr. Pavlat completed a performance review of Ms. Abell. It was the lowest review she had ever received. Typically, Ms. Abell received a superior rating which entitled her to a monetary award. The lower rating made her ineligible for a monetary award." Abell's SOF, p. 5 (Dkt. 42) (citing Abell Decl., ¶¶ 28, 37-38 (Dkt. 44) ("On October 28, 2016, Mr. Pavlat completed my performance review. It was the lowest review I had ever received. Mr. Pavlat did not explain to me why my rating was lower. He also did not put any comments on the review which would explain the lower rating. Typically, I received a superior rating, which entitled me to a monetary award. The 2016 performance review did not entitle me to a performance award. . . . . Shortly after my 2016 review, Mr. Pavlat added critical element number 4 [("Teamwork and Communication")] to my

---

[12] Defendant again objects, arguing that Abell's statements lack personal knowledge, are conclusory, and constitute inadmissible hearsay. See Obj. to Abell Decl., pp. 4-5 (Dkt. 47-1). These arguments fail for the reasons already stated. Moreover, the Court considers Abell's perspective on these points as just that – informed by her subjective understanding of what took place in the above-discussed meetings and presentations – not as what actually took place. Abell's perspectives (and the reasons for them) can be tested via cross-examination at trial.

evaluation. This element is completely subjective. As far as I know, I am the only one in the office to have this element as a part of my performance evaluation. Every performance evaluation I've received since 2016 has been lower than a superior rating without any explanation. I also have not received another performance cash award.")).[13]

- The In/Out Board Retaliation: "In 2018, after Ms. Abell made another complaint about unequal treatment regarding the in/out board, Mr. Pavlat attempted to suspend Ms. Abell for seven days. On July 12, 2018, he gave her a proposed 7-Day suspension based on inappropriate conduct and false or unfounded statements. In the proposed 7-Day suspension document, Mr. Pavlat made it clear that Ms. Abell should not be allowed to make complaints [and] he stated it was inappropriate for her to question the actions of certain individuals or his alleged favoritism toward them." Abell's SOF, p. 7 (Dkt. 42) (citing Abell Decl., ¶¶ 32-36 (Dkt. 44) ("On May 8, 2018, I received an e-mail from Mr. Pavlat sent out on May 4, 2018. I thought this e-mail was addressed to me alone because it mentioned travel to Cottonwood. I saw it as another double standard which was being applied to me and not to the younger workers. I was aware and had complained before about the younger workers not having to use the in/out board or make others aware of their schedule. I responded to the e-mail, in yet another attempt to point out Mr. Pavlat's inconsistency in the manner he treated older versus younger workers. I was unaware that when I replied, I was replying to the entire office. I thought the e-mail was only addressed to me. After I sent out my e-mail, Mr. Pavlat never once spoke to me about it. Instead, on June 12, 2018, he delivered to me a proposed 7-Day Suspension. Mr. Pavlat attempted to suspend me for seven days. Mr. Pavlat made it clear in his proposed suspension that he felt it was inappropriate for me to even bring disparate treatment (favoritism) allegations. This felt like another instance of retaliation to me. Mr. Pavlat's attempt to have me suspended for seven days was reviewed by Aaron Rasmussen. Mr. Rasmussen mitigated one of Mr. Pavlat's charges against me and sustained the other charge. I was subjected to a three day suspension.")).[14, 15]

---

[13] Defendant's objections to these statements have already been addressed when discussing Abell's "poor performance reviews" vis à vis her age discrimination claim. *See supra.*

[14] Defendant's objections to these statements have already been addressed when discussing Abell's "suspension" vis à vis her age discrimination claim. *See supra.*

[15] Regardless, as stated earlier when discussing Abell's age discrimination claim and Defendant's attendant waiver argument, where purported adverse employment actions took place before May 9, 2016 (45 days before Abell contacted the EEOC), they are not actionable. *See supra.* This would at least seem to discount the alleged NEPA process retaliation as a basis for Abell's retaliation claim because it took place in 2015. In this limited respect, Defendant's Motion for Summary Judgment is granted.

As before, because Abell has established a prima facie case of retaliation, *McDonnell Douglas* calls on Defendant to produce evidence of legitimate, nondiscriminatory reasons for its employment decisions. As before, it has done this. *See supra* (referencing staffing and scheduling needs, alongside Abell's alleged inappropriate and unprofessional conduct). This shifts the burden to Abell to raise a triable issue of fact as to whether Defendant's proffered reasons for its actions are pretextual. And, as before, Abell has done this. *See id*. (referencing totality of Mr. Pavlat's conduct when disciplining Abell, including timing); *see also* Opp. to MSJ, pp. 7-14 (Dkt. 41) (same). In short, because triable issues of fact remain on Abell's retaliation claim, summary judgment is inappropriate on the whole. *But see supra* (discussing those instances where certain of Defendant's arguments are well-taken and consequently where limited relief is granted).

## C. Hostile Work Environment Claim

To establish a prima facie case for age-based hostile work environment under the ADEA, a plaintiff must show that (1) the defendant subjected her to verbal or physical conduct based on age; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *See Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991) (hostile work environment claim cognizable under ADEA). "Not every insult or harassing comment will constitute a hostile work environment." *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). Both subjective and objective requirements must be satisfied by demonstrating that the plaintiff perceived the work environment to be hostile and that a reasonable person in the plaintiff's position would have perceived it as hostile. *See Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). In considering the objective hostility of a work environment, the court considers the totality of the

circumstances, including the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004). Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001).

Abell states that "[t]he discrimination exhibited by Defendant was sufficiently severe or pervasive that it constituted a hostile work environment," initially alleging in her Amended Complaint:

> Plaintiff has been harassed and/or discriminated against on almost a daily basis, since approximately March of 2015. The illegal actions continue. Plaintiff was asked about when she was going to retire. She was criticized for her older generation communication style. Plaintiff was excluded from meetings and limited in her participation in other meetings. Further, younger co-workers of Plaintiff were allowed to continually circumvent the chain of command, in order to cut Plaintiff out of all processes involving her employment. Plaintiff was also publicly reprimanded and disciplined, while Mr. Pavlat and Ms. Clark claimed to only reprimand and discipline younger workers in private. Finally, Plaintiff's supervisor refused to take action on her reasonable accommodation request under the ADA.

> Defendant also employed policies and practices which indicated a preference based on age. For example, Mr. Pavlat and other supervisors stated orally, and in writing, their preference for a younger work force and asked that all new hires be younger workers. And, according to recent surveys, as many as 35% of all Bureau of Land Management employees experience some form of harassment; 21% of that harassment is based on age.

Am. Compl., ¶¶ 28-29 (Dkt. 8).

Defendant rejects this position, arguing that Abell's subjective sensitivities, in and of themselves, do not establish a rampant, hostile work environment for older workers at the BLM. According to Defendant, without statements reflecting that Abell's age drove Defendant's

conduct toward her, Abell's theory of liability necessarily fails to connect the dots between her

jaded perception and workplace reality. *See* Mem. ISO MSJ, p. 30 (Dkt. 32-1) ("Here, there are

no statements suggesting age-based animus. And Abell's entire theory seems to be based on a

similar false syllogism: (A) I can't get along with my coworkers; (B) I am older than some of

them; [so] (C) I can't get along with my coworkers because I am older than them.") (citing

*Crawford v. Median Gen. Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996)). Defendant has a point, but it

only goes so far when attempting to have Abell's hostile work environment claim dismissed

from the action on summary judgment.

Clearly, Abell and some of her co-workers and supervisors have a strained relationship

stemming, at least in part, from Abell's perception that arguably all undesirable events at work

are tied to her age. It is even true that some of what Abell complains about is not indicative of a

hostile work environment at all.[16] This is to say that Defendant appropriately raises these points

in opposing Abell's hostile work environment claim and that Abell must confront them at trial.

The Court recognizes the possibility of age discrimination and retaliation claims (*see supra*) such

that, if true, and combined with Abell's further elucidation of her claim within her briefing,[17]

establishes not only that (1) she perceived Defendant's conduct as hostile, abusive, and/or

---

[16]  For example, as discussed during oral argument, that Defendant has expressed an
interest in recruiting young employees is not at all unusual when attempting to fill entry-level
positions and/or trying to establish professional continuity over time.

[17]  Opposing Defendant's summary judgment efforts, Abell emphasizes how (1) she
needed to step down as acting field manager in 2011 because she was asked to be complicit in
younger employees' bogus timekeeping practices; (2) a younger worker was promoted and given
part of her job description in 2012, limiting her opportunity for advancement; (3) she was denied
training opportunities in 2013, 2016, and 2017 while training was provided to younger
employees; (4) younger workers were permitted to violate the law, whereas she was reprimanded
upon complaining about such violations; (5) she was reprimanded for using PowerPoint slides
that were used in other human resources presentations; (6) she was given poor performance
reviews after complaining about her disparate treatment; and (7) she was suspended after
mistakenly sending a critical email to the entire office. *See* Opp. to MSJ, pp. 16-17 (Dkt. 41).

humiliating, but that (2) a reasonable jury could conclude that any differences in the way she was treated from other employees were not, as Defendant implicitly argues, the sort of innocuous dealings that are not actionable.  In other words, it is possible that a reasonable jury could find an objectively hostile or abusive environment, because of the nature, frequency, permanence, and cumulative effect of the alleged conduct towards older employees like Abell.  Therefore, summary judgment on the question of hostile work environment is inappropriate.

With all this in mind, though there may be some concern about Abell's strength of proof and whether the elements of her claims can be established to a fact-finder, the Court is not persuaded as a matter of law that they have absolutely not been established for the purposes of summary judgment – such is the "tilt of the table" so to speak, when assessing Defendant's arguments.  At this stage of the litigation, the evidence must be viewed in Abell's favor and, doing so, warrants the denial (for the most part) of Defendant's Motion for Summary Judgment. Had roles been reversed and Abell moved for summary judgment on her claims, those same factual discrepancies would have similarly prevented the entry of summary judgment in her favor.

## IV.  <u>ORDER</u>

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (Dkt. 32) is GRANTED, in part, and DENIED, in part, as follows:

a.     Abell may generally proceed on her age discrimination claim; in this respect, Defendant's Motion for Summary Judgment is DENIED.  However, Abell may only assert those pre-May 9, 2016 actions referenced in this Memorandum Decision and Order as the bases for her age discrimination claim; in this respect, Defendant's Motion for Summary Judgment is GRANTED.

**MEMORANDUM DECISION AND ORDER - 21**

b.      Abell may generally proceed on her retaliation claim; in this respect, Defendant's Motion for Summary Judgment is DENIED.  However, Abell may only assert those pre-May 9, 2016 actions referenced in this Memorandum Decision and Order as the bases for her retaliation claim; in this respect, Defendant's Motion for Summary Judgment is GRANTED.

c.      Abell may proceed on her hostile work environment claim; in this respect, Defendant's Motion for Summary Judgment is DENIED.

2.      Plaintiff's Motion to Strike Declarations Submitted in Reply (Dkt. 48) is DENIED as moot.

DATED: September 30, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge